No. 20-15568

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MACKENZIE BROWN,<br><br>      Plaintiff-Appellant,<br><br>v.<br><br>STATE OF ARIZONA, et al.,<br><br>      Defendants-Appellees. | On appeal from the United States District Court for the District of Arizona<br><br>No. CV17-03536-PHX-GMS |

## APPELLEES' RESPONSE TO BRIEF OF AMICUS CURIAE
## THE UNITED STATES

Arizona Attorney General's Office

Claudia Acosta Collings
Assistant Attorney General
416 W. Congress, 2nd Floor
Tucson, AZ 85701-1315
(520) 638-2815 ♦ (520) 628-6050 (fax)
Claudia.Collings@azag.gov

Stephanie Elliott
Assistant Attorney General
2005 N. Central Avenue
Phoenix, AZ 85004-1592
(602) 542-8798 ♦ (602) 542-4085 (fax)
Stephanie.Elliott@azag.gov

Attorneys for Defendants-Appellees

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iii

INTRODUCTION .....................................................................................................1

ARGUMENT .............................................................................................................2

I.    *Davis* Recognized Two Separate Elements: Control over the Harasser and Control over the Context in Which the Harassment Occurs. ...........................2

II.    The Court Should Decline to Consider the Department's Argument, Which Brown Failed to Preserve....................................................................8

III.    The Panel Correctly Affirmed the District Court's Ruling that Brown Failed to Show that the University Exercised Control over the Context of Her Harassment. ........................................................................................9

CONCLUSION ........................................................................................................10

CERTIFICATE OF COMPLIANCE .......................................................................11

CERTIFICATE OF SERVICE ................................................................................12

ii

# TABLE OF AUTHORITIES

Page

Cases

*Brown v. Arizona,*
  23 F.4th 1173 (9th Cir. 2022) ................................................................ 1, 3, 5, 8, 9

*DeGroote v. Ariz. Bd. of Regents*,
  No. CV-18-00310-PHX-SRB, 2020 WL 10357074 (D. Ariz. Feb. 7, 2020) ........ 6

*Ganwich v. Knapp*,
  319 F.3d 1115 (9th Cir. 2003) ................................................................................ 9

*Gebser v. Lago Vista Indep. Sch. Dist.,*
  524 U.S. 274 (1998) ............................................................................................... 4

*Loher v. Thomas*,
  825 F.3d 1103 (9th Cir. 2016) ................................................................................ 9

*United States v. Gementera*,
  379 F.3d 596 (9th Cir. 2004) .................................................................................. 9

Statutes

20 U.S.C. § 1681(a) ................................................................................... 1, 3, 6, 8

Rules

Fed. R. App. P. 32(a)(4)-(6) .................................................................................. 11

Regulations

85 Fed. Reg. 30,093 (May 19, 2020) ...................................................................... 7

85 Fed. Reg. 30,206 (May 19, 2020) ...................................................................... 6

87 Fed. Reg. 41,390 (July 12, 2022) ....................................................................... 6

87 Fed. Reg. 41,402 (July 12, 2022) ....................................................................... 6

## INTRODUCTION

The position of the Department of Education and the Department of Justice (collectively "Department") is that a school's authority to discipline a student for harassing another student can, by itself, establish that the school has control over the context of the harassment, which allows a private right of action. (Amicus Br. ep 8.[1]) The Department cites no authority supporting this position, which is contrary to *Davis ex rel. LaShonda D. v. Monroe County Board of Education*, 526 U.S. 629, 645 (1999).

Title IX's "plain language confines the scope of prohibited conduct based on the recipient's degree of control over the harasser *and the environment* in which the harassment occurs." *Davis*, 526 U.S. at 644 (emphasis added). In short, *Davis* established two criteria, but the Department seeks to collapse them into one. To read Title IX and *Davis* as the Department proposes would "eviscerate[] Congress's express requirement that conduct is actionable only if it occurs 'under an education program or activity receiving Federal financial assistance,'" as the panel majority recognized. *Brown v. Arizona,* 23 F.4th 1173, 1182 (9th Cir. 2022) (cleaned up) (quoting 20 U.S.C. § 1681(a)). The Court should reject the Department's argument and instead apply Title IX's plain language as definitively

---

[1] Citations are to the Court's electronic page ("ep") numbering.

interpreted in *Davis*. That is, it must consider both control elements, not just whether the University had control over the harasser via its code of conduct.

## ARGUMENT

I. *Davis* **Recognized Two Separate Elements: Control over the Harasser and Control over the Context in Which the Harassment Occurs.**

Title IX provides a private right of action against a federally funded education institution based on student-on-student sexual harassment "where the funding recipient acts with deliberate indifference to known acts of harassment in its programs or activities." *Davis*, 526 U.S. at 633. To establish a Title IX claim, a plaintiff must show that the discrimination occurred within the funding recipient's educational "program or activity." 20 U.S.C. § 1681(a). And "because the harassment must occur 'under' 'the operations of' a funding recipient, the harassment must take place in a context subject to the school['s] . . . control." *Davis*, 526 U.S. at 645 (internal citations omitted). The harasser's identity is relevant, and Title IX's "plain language confines the scope of prohibited conduct based on the recipient's degree of control over the harasser and the environment in which the harassment occurs." *Id.* at 644. Thus, a school's damages liability under Title IX is limited to circumstances where the school "exercises substantial control over *both the harasser and the context in which the known harassment occurs*." *Id.* at 645 (emphasis added).

2

The Supreme Court thus clearly set forth two distinct prongs in the control test: control over the harasser *and* control over the context of the harassment. The panel majority recognized that the two prongs serve distinct purposes. "The control-over-harasser requirement arises from the limitation that educational institutions be held liable only for their own misconduct." *Brown*, 23 F.4th at 1181 (citing *Davis*, 526 U.S. at 644). By contrast, "[t]he control-over-context requirement arises from the limitation that Title IX addresses discrimination occurring only under an 'education program or activity receiving Federal financial assistance.'" *Id.* (quoting 20 U.S.C. § 1681(a)).

The Department ignores the distinction between the two prongs of the *Davis* control requirement. (Amicus Br. ep 10-14.) It instead rephrases the test, stating that a court must "determine whether the school had 'substantial control'—that is, whether the harassment occurred under the school's operations and in a context in which the school could have exercised its power to prevent the harassment that ultimately deprived the student of access to a covered program or activity." (*Id.* ep 10.) It then argues that the substantial-control requirement may be satisfied based solely on a school's disciplinary authority over the harasser. (*Id.* ep 11-13.)

But *Davis* runs counter to the Department's reading. As noted, the Supreme Court distinguished between the factors bearing on control *over the context in which the harassment occurs*, such as misconduct that takes place during school

3

hours, on school grounds, in a classroom, during school activities, while under the supervision of school employees, versus factors bearing on control *over the harasser*, such as when "the harasser is under the school's disciplinary authority." 526 U.S. at 646-47. The Court discussed a school's disciplinary authority and degree of control in relation to the control-over-harasser element—*not* control-over-context element. *Id.* at 644, 645, 646, 649. And to that end, it acknowledged that "[a] university might not, for example, be expected to exercise the same degree of *control over its students* that a grade school would enjoy, and it would be entirely reasonable for a school to refrain from a form of disciplinary action that would expose it to constitutional or statutory claims. *Id.* at 649 (emphasis added).

Nothing in *Davis* (or any other known authority) supports the Department's contention that factors showing the school's control over the harasser can show its control over the context in which harassment occurs.

As the Court recognized, Title IX put recipients on notice that, as a condition of federal funding, they must respond appropriately to known sexual harassment of students occurring *in their programs and activities* that excludes students from participating in, or denies them the benefits of, those education programs and activities. *Davis,* 526 U.S. at 640; *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274 (1998). It would be untenable to find, now, more than two decades after *Davis*, that Title IX gives schools notice that accepting federal funding imposes liability

for students' off-campus conduct having no connection to any school event, program, or activity, merely because the conduct is covered under the school's disciplinary policy. *Brown*, 23 F.4th at 1180 (citing *Davis,* 526 U.S. at 640).

The Department asserts that a school's decision to exercise disciplinary authority over students even for off-campus conduct reflects the school's "belief[2] that it is seeking to control conduct arising 'under' its operations." (Amicus Br. ep 12.) It cites no authority and provides no reasoning for this supposition. Indeed, many organizations have codes covering all aspects of their members' daily lives, including actions that are unrelated to the organizations' functions. (Police departments and the military come immediately to mind.) The mere fact that a member may be disciplined for prohibited conduct does not mean that the conduct occurred in a context over which the organization exercised substantial control.

Under the Department's reasoning, the control-over-context element simply vanishes if a school exerts enough control over the harasser. Imagine an Arizona university whose code of conduct requires that a student be expelled for any felony conviction. Imagine that a male student subject to that code randomly runs into another female student in a far-off place—say, New York City or the wilds of Alaska—with no university-related function taking place. Imagine that he attacks her and is convicted of battery, and the university therefore expels him for

---

[2] Nothing in *Davis* or any other known authority indicates that a school's *beliefs* are pertinent to whether Title IX applies.

5

violating its disciplinary code. Under the Department's argument, this disciplinary control over the harasser would give the student–victim a Title IX private right of action against the university, even though no university program or activity had any connection to the assault and even though the university has no control over New York City streets or the Alaskan tundra. *Davis* requires such control because Title IX is limited to "education program[s] or activit[ies]." 20 U.S.C. § 1681(a). The Department's argument deviates from *Davis* and falls of its own weight.

The Department's reference to its 2020 regulations and its 2022 proposed regulations have no bearing here. First, the 2020 regulations became effective on August 14, 2020, and are not applied retroactively. 85 Fed. Reg. 30,206 (May 19, 2020). And the rulemaking process is still underway for the 2022 proposed regulations obligating a school to address conduct that occurs under the school's disciplinary authority; they are not yet in effect.[3] 87 Fed. Reg. 41,390 (July 12, 2022). Nevertheless, the 2020 regulations are noteworthy because they attempted to codify Title IX jurisprudence consistently with *Davis*. The Department stated

---

[3] Notably, this proposed rule change—which "would make clear" that whether conduct falls under a recipient's education program or activity for purposes of Title IX, is contingent "on whether the recipient exercises disciplinary authority over the respondent's conduct in that context"—relies not on Supreme Court precedent but on the unpublished, district court decision in Brown's companion case, 87 Fed. Reg. 41,402 (July 12, 2022) (citing *DeGroote v. Ariz. Bd. of Regents*, 2020 WL 10357074, at *8 (D. Ariz. Feb. 7, 2020)).

that it was attempting "to clarify that a recipient's 'education program or activity" may also include situations that occur off campus," which it did by

> add[ing] to § 106.44(a) the statement that "education program or activity" includes locations, events, or circumstances over which the recipient exercised substantial control over *both* the respondent *and the context in which the harassment occurs*. This helps clarify that even if a situation arises off campus, it may still be part of the recipient's education program or activity *if the recipient exercised substantial control over the context and* the alleged harasser.

85 Fed. Reg. 30,093 (May 19, 2020) (emphasis added). Nonetheless, because neither the 2020 regulations nor the 2022 proposed regulations were in effect in 2016 when Brown was assaulted, they are irrelevant.

The Department's current interpretation of *Davis*—like its newly proposed regulations—conflates *Davis*'s two separate and distinct control elements into one by asserting that a claimant seeking monetary damages under Title IX may forego establishing that her harassment occurred in an environment or a context subject to the University's control if the University has exercised control over her harasser through the University's code of conduct. This is contrary to *Davis*'s two-part test, as the majority correctly recognized. *Brown*, 23 F.4th at 1181.

The Department's remaining arguments are equally unavailing. (Amicus Br. ep 14-19.) It again provides no authority for its assertion that a school's disciplinary authority provides strong evidence that a school considers harassment to oc-

7

cur under one of its programs or activities sufficient to establish Title IX lability.[4]

Such an interpretation runs afoul of the plain language of 20 U.S.C. 1681(a) and *Davis*'s holding that damages are allowed only in "limited circumstances," 526 U.S. at 643—i.e., when the school has control over *both* the harasser *and* the context in which the harassment occurs. Accepting the Department's position would expand liability beyond Title IX's express limitations. And applying the Department's new interpretation regarding disciplinary authority would encourage institutions to loosen their disciplinary codes to not cover any off-campus student conduct.

## II. The Court Should Decline to Consider the Department's Argument, Which Brown Failed to Preserve.

The Department argues that a school's disciplinary authority over a harasser's conduct demonstrates substantial control over the context of her harassment. But Brown did not timely make any such argument—not in the district court and not in the principle briefs on appeal. Indeed, the majority noted that "Brown has not advanced this theory, and in fact *expressly disclaimed it*." *Brown*, 23 F.4th at 1181 (emphasis added). The panel unanimously rejected the theory that she actually raised—that the control-over-context element applied to the harasser's

---

[4] Again, it is doubtful that a school's personal belief about the scope of its programs has any relevance to a court's determination whether harassment is actionable under Title IX. *See supra* p.5 n.2. The Department cites no authority establishing that it does.

8

conduct over a different student who was harassed on-campus in a dorm. *Id.* at 1175, 1193.) This Court generally refuses to consider arguments that an appellant did not raise below, *e.g.*, *Ganwich v. Knapp*, 319 F.3d 1115, 1120 n.8 (9th Cir. 2003), or in her opening brief, *Loher v. Thomas*, 825 F.3d 1103, 1119 (9th Cir. 2016). It similarly declines to consider arguments raised by amici when a party has not properly raised them. *United States v. Gementera*, 379 F.3d 596, 607 (9th Cir. 2004). The Court should not grant rehearing in this case based on new arguments that were not timely and properly raised.

### III. The Panel Correctly Affirmed the District Court's Ruling that Brown Failed to Show that the University Exercised Control over the Context of Her Harassment.

The Department argues that the panel's decision was wrong because, it asserts, the University exercised control over the context in which Bradford assaulted Brown. (Amicus Br. ep 19-20.) It claims that the University had substantial control over the context of Bradford's assaults based on the school's and the football's teams disciplinary authority. (*Id.* ep 21-23.) But as previously explained, the University's disciplinary authority meets only the first part of the control element: control over the harasser. The Department has melded the two prongs of the control element into one, so that if there is substantial control over the harasser because of a school's disciplinary authority, there is *also* control over the context of the harassment. The Department presents no authority supporting this conten-

9

tion other than its bald assertion. Its *ipse dixit* does not establish how the University's choice to implement disciplinary policies covering off-campus conduct—exercising control over potential harassers—creates the control over context that is necessary, under *Davis*, to establish that the conduct occurred under the University's operations, educational programs, or activities. The undisputed evidence is that Bradford's assaults on Brown occurred off-campus in a private residence with no connection to any University program or activity. The district court correctly ruled that Brown had not established her prima facie case, and the panel correctly affirmed.

## CONCLUSION

The Court should deny the Petition for Rehearing and Rehearing en Banc and should maintain its affirmance of the Judgment.

Respectfully submitted this 14th day of October, 2022.

    Mark Brnovich
    Arizona Attorney General

    /s/ Claudia Acosta Collings
    Claudia Acosta Collings
    Stephanie Elliott
    Assistant Attorney General
    Attorneys for State of Arizona

10601563.4 — LMS17-0459/G201720685-1

## CERTIFICATE OF COMPLIANCE

I am the attorney or self-represented party.

The brief's type size and typeface comply with Fed. R. App. P. 32(a)(4)-(6).

I certify that this brief complies with the 10-page length limit designated by court order dated July 14, 2022 (Doc. 57).

Dated this 14th day of October, 2022.

/s/ Claudia Acosta Collings
Claudia Acosta Collings
Stephanie Elliott
Assistant Attorney General

10601563.4 — LMS17-0459/G201720685-1

## CERTIFICATE OF SERVICE

      I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on October 14, 2022.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


By:  s/S. Franz
10601563.4 — LMS17-0459/G201720685-1