No. 20-15568

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

| | |
|---|---|
| MACKENZIE BROWN, | On appeal from the United States District Court for the District of Arizona |
| Plaintiff-Appellant, | |
| v. | No. CV17-03536-PHX-GMS |
| STATE OF ARIZONA, et al., | |
| Defendants-Appellees. | |

**APPELLEES' SUPPLEMENTAL BRIEF**

Arizona Attorney General's Office

Claudia Acosta Collings
Assistant Attorney General
416 W. Congress, 2nd Floor
Tucson, AZ 85701-1315
(520) 638-2815
Claudia.Collings@azag.gov

Stephanie Elliott
Assistant Attorney General
2005 N. Central Avenue
Phoenix, AZ 85004-1592
(602) 542-7699
Stephanie.Elliott@azag.gov

Attorneys for Defendants-Appellees

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................3

INTRODUCTION .................................................................................5

ARGUMENT .........................................................................................6

I.    The Court May Not Consider Brown's New Argument. ...............................6

II.   Title IX Has Separate Control Elements—Over the Harasser and Over the
      Context—and Control Over the Harasser Does Not Equal Control Over
      His Off-Campus Residence. ...........................................................8

III.  Brown's Interpretation of Title IX Is Overbroad. ........................................16

IV.   Adopting Brown's Argument Would Create a Circuit Split. ........................18

CONCLUSION ....................................................................................20

CERTIFICATE OF COMPLIANCE FOR BRIEFS ...............................................21

CERTIFICATE OF SERVICE .................................................................22

# TABLE OF AUTHORITIES

Page

<u>Cases</u>

*Brown v. Arizona*,
 23 F.4th 1173 (9th Cir. 2022), *vacated*, 56 F.4th 1169 (9th Cir. 2022) ...........6, 7

*Chen ex rel. Chen v. Albany Unified Sch. Dist.*,
 56 F.4th 708 (9th Cir. 2022) ....................................................................14

*Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*,
 526 U.S. 629 (1999) ...................................... 5, 8, 9, 10, 11, 13, 15, 16

*Doe v. Plymouth-Canton Cmty. Schs.*,
 2022 WL 1913074 (E.D. Mich. June 3, 2022) ...................................19

*Doe v. Round Valley Unified Sch. Dist.*,
 873 F. Supp. 2d 1124 (D. Ariz. 2012) ...............................................17

*Feminist Majority Found. v. Hurley*,
 911 F.3d 674 (4th Cir. 2018)...................................................... 13, 14

*Garrett v. Univ. of S. Fla. Bd. of Tr.*,
 824 Fed. App'x 959 (11th Cir. 2020) ..................................................19

*Hall v. Millersville Univ.*,
 22 F.4th 397 (3d Cir. 2022)................................................................13

*Honcharov v. Barr*,
 924 F.3d 1293 (9th Cir. 2019) ..............................................................6

*Indep. Towers of Wash. v. Washington*,
 350 F.3d 925 (9th Cir. 2003).................................................................6

*Loher v. Thomas*,
 825 F.3d 1103 (9th Cir. 2016) ..............................................................6

*O'Shea v. Augustana Coll.*,
   593 F.Supp.3d 838 (C.D. Ill. 2022) .......................................................19

*Ostrander v. Duggan,*
   341 F.3d 745  (8th Cir. 2003) .............................................................18

*Pahssen v. Merrill Cmty. Sch. Dist.*,
   668 F.3d 356 (6th Cir. 2012).................................................................19

*Roe ex rel. Callahan v. Gustine Unified Sch. Dist.*,
   678 F.Supp.2d 1008 (E.D. Cal. 2009)....................................................13

*Roe v. St. Louis Univ.*,
   746 F.3d 874 (8th Cir. 2014)..................................................................18

*Ross v. Univ. of Tulsa*,
   859 F.3d 1280 (10th Cir. 2017) ................................................... 12, 13

*Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*,
   511 F.3d 1114 (10th Cir. 2008) ............................................................14

*Rudman v. Okla. ex rel. Bd. of Regents.*,
   2022 WL 17083406  (W.D. Okla. Nov. 18, 2022) .............................................19

*Simpson v. Univ. of Colo. Boulder*,
   500 F.3d 1170 (10th Cir. 2007) ...........................................................11

*United States v. Sineneng-Smith*,
   140 S.Ct. 1575 (2020) .....................................................................7, 8

*Weckhorst v. Kansas State Univ.*,
   241 F. Supp. 3d 1154 (D. Kan. 2017)................................................12

Statutes

20 U.S.C. § 1681(a) ............................................................... 8, 10

4

## INTRODUCTION

This Court may not consider Brown's argument because she did not timely raise it. Furthermore, she advocates an interpretation of Title IX that knows no boundaries and is untethered from the statute's text.

Under *Davis ex rel. LaShonda D. v. Monroe County Board of Education*, 526 U.S. 629, 643 (1999), establishing Title IX liability requires demonstrating the institution had control over *both* the harasser *and* the context in which the harassment occurred. No authority holds that disciplinary authority over the harasser satisfies the control-over-context element.

Moreover, "private damages actions [under Title IX] are available only where recipients of federal funding had adequate notice that they could be liable for the conduct at issue." *Id.* at 640. Title IX does not give notice that a university is potentially liable for conduct occurring between students at an off-campus residence over which it does not exercise control. *See id; see also Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S.Ct. 1562 (2022) (Title IX does not give institutions notice of potential liability for emotional damages).

The Court should reject Brown's new argument and instead apply Title IX's plain language as *Davis* definitively interpreted it: A school is liable only for its own inaction to known harassment occurring in contexts over which it exercises substantial control.

5

## ARGUMENT

### I. The Court May Not Consider Brown's New Argument.

This Court may not consider Brown's argument because she did not timely raise it. She even disclaimed it. This Court considers only arguments specifically and distinctly raised in the opening brief. *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003). It rejects arguments not raised below. *Loher v. Thomas*, 825 F.3d 1103, 1121 (9th Cir. 2016). And it rejects waived arguments. *Honcharov v. Barr*, 924 F.3d 1293, 1296 n.1 (9th Cir. 2019).

Brown argued to the panel that she need not show the University's control over the context of *her* harassment. (Op. Br. ep[1] 25-26.) She admitted that Bradford's off-campus residence was "arguably not within the University's control." (*Id*. ep 24.) She instead argued that she need only show the University's control over the context of *Bradford's on-campus harassment of other women before her*. (*Id*.) The panel unanimously rejected this argument. *Brown v. Arizona*, 23 F.4th 1173, 1180-81 (9th Cir. 2022), *vacated*, 56 F.4th 1169 (9th Cir. 2022) (majority); *id.* at 1193 (Fletcher, J., dissenting).

The dissent—not Brown—raised her present argument. *See id.* at 1193-95. This was improper, as the majority noted:

---

[1] "Ep" refers to the Court's electronic page.

6

> Brown has not advanced this theory, and in fact expressly dis-
> claimed it, arguing that "the question is whether the University
> had sufficient control over the context in which Brown alleges
> that it failed to act, not whether it had sufficient control over the
> context in which she was later attacked."

*Id.* at 1180 (cleaned up) (quoting Op. Br. ep 5). The new theory was indeed im-proper because the dissent raised it for Brown.

Appellate judges are not advocates; they may not raise issues for a party. *United States v. Sineneng-Smith*, 140 S.Ct. 1575, 1581-82 (2020). The Ninth Circuit panel there sua sponte raised a different issue from the respondent's argument; it ordered additional briefing (including from amici curiae it appointed sua sponte) and then ruled in her favor on its own argument. *Id.* The Supreme Court rejected this nonsense. It held the panel abused its discretion by raising its own arguments. *Id.* at 1581-82. "In our adversarial system of adjudication, we follow the principle of party presentation." *Id.* at 1579. Courts must act as "neutral arbiters of matters the parties present." *Id.* (internal quotation marks omitted). The Court remanded for consideration of the case as *the parties* argued it, "rather than the case designed by the appeals panel." *Id.* at 1578-79.

Brown cannot overcome her forfeiture and waiver by adopting the dissent's argument and raising it now. *Sinening-Smith* reversed even though the respondent there adopted amici's arguments on the issues the panel raised. *Id.* at 1581. Indeed, this case is even stronger because Brown, unlike the respondent there, did

7

not adopt the dissent's argument until after the panel had already decided the case. *Sinening-Smith* thus demonstrates both that the dissent here improperly raised a new argument for Brown and this Court panel may not consider it.

In any event, the dissent's argument lacks merit, as the following discussion demonstrates.

## II. Title IX Has Separate Control Elements—Over the Harasser and Over the Context—and Control Over the Harasser Does Not Equal Control Over His Off-Campus Residence.

Title IX allows suits against federally funded education institutions based on student-on-student sexual harassment "where the funding recipient acts with deliberate indifference to known acts of harassment *in its programs or activities*." *Davis*, 526 U.S. at 633 (emphasis added). The discrimination must occur within the funding recipient's educational "program or activity." 20 U.S.C. § 1681(a). And "because the harassment must occur 'under' 'the operations of' a funding recipient, the harassment must take place in a context subject to the school['s] … control." *Davis*, 526 U.S. at 645 (internal citations omitted). Thus, liability arises only when the school "exercises substantial control over *both* the harasser *and* the context in which the known harassment occurs." *Id.* at 645 (emphasis added); *accord id.* at 644.

The two separate prongs serve distinct purposes. The control-over-the-harasser requirement derives from the constraint that schools may be liable only

for their own misconduct. *Id.* at 644. The control-over-the-context requirement stems from the express statutory requirement that the discrimination occur under an "education program or activity receiving Federal financial assistance." *Id.* at 645.

Interpreting the plain statutory language, *Davis* held that damages are allowed only when the school has control over *both* the harasser *and* the context in which the harassment occurs, *id.* at 643-47. Brown's interpretation would expand liability beyond Title IX's express limitations as recognized in *Davis*.

Brown mischaracterizes the University's position as "an overly formalistic rule that relies on arbitrary distinctions." (Supp. Br. ep 5.) She argues that control-over-context is not synonymous with geographic location and a school *can* control off-campus locations via regulatory or disciplinary authority over its students while they reside or merely exist in those locations. (*See e.g*., *id*. ep 13.) Brown mis-construes the University's position. And while she goes to great lengths to explain how the University can control context, all she cites are the football rules regarding living off-campus, which do not suffice here.

The University has never argued that Title IX's limits are strictly geographical.[2]  Nevertheless, a claim for student-on-student harassment applies *only* to discrimination occurring within the funding recipient's educational "program or activity."  20 U.S.C. § 1681(a).  Thus, "the harassment must take place in a context subject to the school['s] ... control."  *Davis*, 526 U.S. at 645.  While a school may exercise substantial disciplinary control over a student, even beyond the campus boundaries, it does not follow that the school thereby exercises substantial control over every environment in which that student may find himself.

Brown misconstrues *Davis* while urging a loose definition of "context," which she gradually expands into an argument that disciplinary authority allows a school to control almost anything.  (Supp. Br. ep 12).  Context, she proposes, actually means "environment," which more generally includes "conditions" or "circumstances."  (*Id*. ep 6.)  This morphs into an argument that liability can arise anywhere "students live, learn, socialize with classmates, and otherwise experience University life."  (*Id*. ep 13.)  But showing a school has disciplinary authority over a harasser does not kill two birds with one stone; *Davis* refutes that proposition.

---

[2] A school *generally* does not exercise substantial control over harassment that occurs off campus.  *E.g.*, *Doe v. Round Valley Unified Sch. Dist.*, 873 F. Supp. 2d 1124, 1136 (D. Ariz. 2012).  But there are exceptions, of course.

In *Davis*, the control-over-context element was easily met because the harassment occurred on school grounds during school hours. *Davis*, 526 U.S. at 646. Having recognized this, the Court turned to the *separate* issue of control over the harasser. *Id*. Recognizing that schools have custodial and tutelary control over children, it held that *control over the harasser* is satisfied if the school has disciplinary authority over the harasser. *Id*. at 646-47. Thus, Brown's argument that "Davis's holding used 'the school's disciplinary authority' as a shorthand for the full substantial control requirement" is simply wrong. (Supp. Br. ep 15.) The Court had already found control over context; its discussion of disciplinary authority addressed only control over the harasser. *Davis*, 526 U.S. at 646-47.

The cases Brown cites (Supp. Br. ep 6-10) do not help her. They do not support her argument, are irrelevant, or actually disprove her position.

*Simpson v. University of Colorado Boulder*, 500 F.3d 1170, 1178 (10th Cir. 2007), found control over context for harassment occurring under an official university policy: a football recruiting program the school sanctioned, promoted, and funded. *Id*. at 1174-75. The court did not discuss whether the school exercised control over a private residence; this was irrelevant because the assaults happened in the context of that recruiting program. *Id*. at 1180-81. Official-policy claims require a different legal analysis. *See id*. at 1174-79. And Brown specifically disclaimed making an official-policy claim. (Op. Br. ep 24.)

11

In *Weckhorst v. Kansas State University*, 241 F. Supp. 3d 1154, 1159-60 (D. Kan. 2017), the plaintiff was assaulted at two fraternity parties: one at a fraternity house and one at a private residence. She sufficiently alleged control over context by alleging that Greek life at KSU is a university program or activity:

> KSU allegedly devotes significant resources to the promotion and oversight of fraternities through its websites, rules, and Office of Greek Affairs. Additionally, although the fraternity is housed off campus, it is considered a 'Kansas State University Organization,' is open only to KSU students, and is directed by a KSU instructor. KSU also has the authority to sanction chapters for conduct that occurs at the off-campus, private fraternity houses.

*Id*. at 1168. Harassment occurring within a university program obviously can fall under Title IX. *Id*. at 1167-68. Notably, the university's control over the harassers, who were KSU students, was not applicable to the control-over-context element. *Id*. at 1168.

In *Ross v. University of Tulsa*, 859 F.3d 1280, 1287 n.5 (10th Cir. 2017), the court did indeed state that the university could have control over an *on-campus* private apartment because it controlled conduct within those apartments and controlled its own campus. But this was dictum,[3] and the court tied control over

---

[3] Control over context was not at issue. The issues were actual notice and the university's alleged deliberate indifference in holding a student-conduct hearing after the assault. *Id.* at 1282. The court addressed the control-over-context element cursorily; the university had mentioned it in discussing actual notice. *Id.* at 1287 n.5.

context to the school's ability to control its own campus, including on-campus apartments by, for example, barring the harasser from campus entirely. *See id.* Here, the University could not bar Bradford from his residence: it has no control over who lives at private, off-campus residences.

*Hall v. Millersville University*, 22 F.4th 397, 408 (3d Cir. 2022), confirms the general rule that universities have substantial control over on-campus harassment. But again, the court discussed the university's disciplinary authority over the harasser—including rules that would have kept him off campus—*only* in relation to the control-over-harasser element. The court analyzed control over context separately from control over harasser, finding that the former was satisfied by the control over the dorm itself. *Id.* at 409. These separate analyses reflect the proper application of *Davis*.

In *Roe ex rel. Callahan v. Gustine Unified School District*, 678 F.Supp.2d 1008, 1025 (E.D. Cal. 2009), the school had substantial control over context because it literally controlled every detail of the high-school football camp, including sponsoring and promoting the camp, supervising and transporting the kids, and establishing and enforcing camp rules.

*Feminist Majority Foundation v. Hurley*, 911 F.3d 674 (4th Cir. 2018), does not help Brown. The harassing messages there originated on or within the immediate vicinity of campus, were posted using the university's wireless network,

13

concerned campus events, and targeted students. *Id*. at 687. Thus, the university had actual, literal control over the context of the harassment: "Although that harassment was communicated through cyberspace, the Complaint shows that UMW had substantial control over the context of the harassment because it actually transpired on campus." *Id*. at 687.

Brown erroneously relies on *Rost* in arguing that a nexus between the school and off-campus conduct is sufficient. (Supp. Br. ep 11.) The court there held that the nexus between the plaintiff's off-campus assaults and the school was insufficient to impose Title IX liability even though harassment occurred between students, some general teasing and harassment occurred on campus, and the harassers threatened to post pictures of the plaintiff at school. *Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1122 n.1 (10th Cir. 2008).[4]

Brown argues that because Bradford's residing off-campus was subject to his coach's approval under team rules, the University had control over his private,

---

[4] Brown's First Amendment cases are inapposite. In such cases, courts must draw a fine distinction between the "First Amendment rights of students in public schools" and the same rights of adults in other settings. *Chen ex rel. Chen v. Albany Unified Sch. Dist.*, 56 F.4th 708, 716 (9th Cir. 2022). A school may regulate student speech that does not align with its educational mission or that disrupts school activities. *Id*. The inquiry, justification, and legal standard for regulating student speech bear no relationship to Title IX and its legal standards.

off-campus residence[5] for Title IX purposes.  (Supp. Br. ep 13.)  The University's additional control over Bradford (the harasser) under these rules does not amount to control over the residence (the context), nor does it obviate the requirement to satisfy the control-over-context element.  If it did, the distinction between the two elements of control would disappear, and *Davis* does not allow that.

Brown implies that Bradford was allowed to live off-campus based on good behavior.  (*See* Supp. Br. ep 13 [citing Pet. for Rehearing ep 18-19], 14.)  She conflates Bradford's supposed right to live off campus with University control over his private residence by overstating the football rules regarding off-campus housing and by confusing control over the harasser with control over the context.  Players could live off-campus "as long as they were doing okay academically and … not being irresponsible as far as making their appointments and practices and meetings and everything else on time."  (2-ER-0054.)  Thus, off-campus housing was not a reward for general good behavior but was tied to grades and showing up for practice on time.  These are rules directed at the players and their conduct, not

---

[5] Brown refers to Bradford's residence as the "team house" (Supp. Br. ep 5, 12, 13) and asserts that the University had "the power to decide where in that area students could live, under what level of supervision," (*id.* ep 13).  Neither is true, and the record contains no support for either misstatement.  (*See* 2-ER-0054.)  Bradford moved into a private, off-campus residence, unrelated to the University or the football program, subject only to a team rule, described below, requiring him to show up for classes and meetings.

player housing. They provide no control over private, off-campus housing. Brown fails to refute *Davis*'s holding that control over the harasser and control over context are separate elements.

### III. Brown's Interpretation of Title IX Is Overbroad.

It is not fearmongering to consider the potential results of an undue expansion of existing law. Brown attempts to limit the effects of her interpretation of Title IX (Supp. Br. ep 16-17), but if disciplinary authority alone satisfies both control elements, universities will be forced to police every possible environment where students might interact with each other, assuming the university has rules regulating off-campus conduct independent of a university program.

Brown tries to downplay the University's Alaska hypothetical with a bit of misdirection, asserting that the University would escape liability there because it likely would not have sufficient notice of the harassment. (Supp. Br. ep 17.) But the fact that the University might win a suit on a separate ground does not detract from the control-over-context point that the hypothetical demonstrates. Under *Davis*, the lack of any University program or activity means that the University does not control the *context* of the hypothetical harassment, even if it otherwise had some disciplinary authority—and therefore control—over the *harasser*. Because *Davis* requires both, Brown's argument that the disciplinary authority over the harasser is sufficient to establish Title IX liability is overbroad and

16

unsupportable.  In the real-world case, Bradford's private, off-campus residence is analogous to the hypothetical's Alaska: in both, the University had no program or other activity going on and *exercised no control over the context*, even while it maintained disciplinary control over the harasser.

Brown's own hypothetical crosses the outer boundaries of Title IX.  (*See* Supp. Br. ep 18.)  She wonders whether Title IX would apply if the University told Bradford he was free to abuse his classmates if he did so off-campus.  (*Id*.)  It would not apply.  A school encouraging its student to abuse classmates outside of school programs certainly would be disturbing.  But while "[v]arious legal theories may provide relief in such a situation[,] Title IX … is not one of them."  *Doe*, 873 F. Supp. 2d at 1137.  In short, Title IX is not the panacea that Brown advocates.

And that is the problem with Brown's position: she evidently wants to use Title IX in *all* situations where sex discrimination deprives a student of educational opportunities.  (*See* Supp. Br. ep 14-15 [arguing that a school should be liable for harassment that occurs outside the area of its control].)  But Title IX is not intended as a panacea and does not transform schools into protectors, responsible for any and all incidents of sexual harassment that affect their students.  It does not place schools *in loco parentis*, requiring them to protect students whenever they leave campus to go about their everyday lives and participate in non-school

activities. Instead, it requires schools to address sex discrimination occurring *under an education program or activity*.

Brown's argument runs counter to this reality, and her attempt to expand Title IX and create a rule of liability for student-on-student harassment—no matter the context—is not only unworkable, it is doomed to failure. Holding schools responsible for harassment occurring in contexts they do not control would not be an effective way of addressing the underlying harassment problem. It would only provide a deep pocket for victim compensation, but that is not Title IX's intent. If Brown believes schools should be forced into that position, her remedy is to ask Congress to change the law, because Title IX—as written and decisively interpreted by the Supreme Court—does not do so.

## IV. Adopting Brown's Argument Would Create a Circuit Split.

Courts in other circuits have insisted that plaintiffs satisfy both separate control elements.

For example, *Ostrander v. Duggan,* 341 F.3d 745, 750-51 (8th Cir. 2003), held the university lacked substantial control over context of harassment perpetrated by students at an on-campus fraternity house because neither the school nor the fraternity owned, possessed, or otherwise controlled it. The Eighth Circuit came to the same conclusion in *Roe v. St. Louis University*, 746 F.3d 874, 884 (8th Cir. 2014), holding no control existed over a party at a private residence and

rejecting amicus argument that disciplinary control alone was sufficient. And *Doe v. Univ. of Missouri*, 2022 WL 4043458, at *15 (W.D. Mo. Aug. 30, 2022), held disciplinary authority over a student athlete was not control over the context of the off-campus harassment. If Brown's argument is correct and all plaintiffs need prove is disciplinary authority over the harasser, then these courts were wrong.

Other courts have also distinguished the control elements. *See, e.g., Rudman v. Okla. ex rel. Bd. of Regents.*, 2022 WL 17083406, at *9 (W.D. Okla. Nov. 18, 2022) (university lacked control over private residence of cheer team members during a cheer-related party even though the team was a university program); *Doe v. Plymouth-Canton Cmty. Schs.*, 2022 WL 1913074, at *10 (E.D. Mich. June 3, 2022) ("Save a school-sponsored activity, a school exerts no control over student-on-student interactions that occur off campus during school holidays ...."); *Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 366 (6th Cir. 2012) ("When conduct occurs ... off school grounds entirely, the school district has control over neither the harasser, nor the context."); *O'Shea v. Augustana Coll.*, 593 F.Supp.3d 838, 847 (C.D. Ill. 2022) (university lacked control over off-campus bar where, it was not sponsoring an event or otherwise exerting control and separately holding it lacked control over non-student harasser); *Garrett v. Univ. of S. Fla. Bd. of Tr.*, 824 Fed. App'x 959, 965 (11th Cir. 2020) (university lacked control over off-campus harassment committed by a Ph.D. candidate).

Adopting Brown's argument would put this Court at odds with those courts.

## CONCLUSION

This Court should affirm the Judgment.

Respectfully submitted this 17th day of February, 2023.

Arizona Attorney General's Office

/s/  Stephanie Elliott
Claudia Acosta Collings
Stephanie Elliott
Assistant Attorneys General
Attorneys for State of Arizona

10998745.3 — LMS17-0459/G201720685-1

## CERTIFICATE OF COMPLIANCE FOR BRIEFS

I am the attorney or self-represented party.

This brief contains 3,500 words, excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

☐ complies with the word limit of Cir. R. 32-1.

☐ is a cross-appeal brief and complies with the word limit of Cir. R. 28.1-1.

☐ is an amicus brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

☐ is for a death penalty case and complies with the word limit of Cir. R. 32-4.

☐ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

    ☐ it is a joint brief submitted by separately represented parties;

    ☐ a party or parties are filing a single brief in response to multiple briefs; or

    ☐ a party or parties are filing a single brief in response to a longer joint brief.

☒ complies with the length limit designated by court order dated January 6, 2023.

☐ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

Dated this 17th day of February, 2023.

/s/ Stephanie Elliott
Claudia Acosta Collings
Stephanie Elliott
Assistant Attorneys General

10998745.3 — LMS17-0459/G201720685-1

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on February 17, 2023. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


By:   /s/  Stephanie Elliott

10998745.3 — LMS17-0459/G201720685-1